UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

SPARKLE D. MUNSEY )
)
v. ) NO. 3:05-CV-05
)
HOWARD CARLTON, Warden )

# MEMORANDUM OPINION

Petitioner Sparkle D. Munsey, Prisoner No. 253491, brings this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, attacking his 1997 state court convictions. The respondent has filed an unopposed motion for summary judgment; a supporting brief; and the state court record. (Docs. 4-6, Addenda 1-14). For the reasons which follow, the motion will be **GRANTED**.

## I. Procedural History

In 1997, the petitioner was convicted in the Criminal Court for Claiborne County, Tennessee, pursuant to his guilty pleas, of three counts of aggravated rape, one count of especially aggravated kidnapping, and one count of especially aggravated robbery. For these offenses, he received terms of 32 ½ years imprisonment, to be served concurrently at 100%. Having pled guilty, he did not pursue direct review but, instead, filed a petition for post-conviction relief in the trial court. After an evidentiary hearing, his petition was dismissed, and subsequently, Tennessee's appellate courts also denied relief. *Munsey v.*

*State*, 2004 WL 587642 (Tenn.Crim.App. Mar. 25, 2004), *perm. app. denied,* (Tenn. 2004). Next, he applied for habeas corpus relief in the trial court, and the case was dismissed for lack of jurisdiction. (Addenda 8 and13). He now brings this petition for a writ of habeas corpus, raising two grounds for habeas corpus relief.

## II. **Factual Background**

The following facts are taken from the state appellate court's opinion on post-conviction review.

> On December 9, 1997, the petitioner entered pleas of guilty to three counts of aggravated rape, one count of especially aggravated kidnapping, and one count of especially aggravated robbery. At the submission hearing, the state summarized the facts as follows:
>
> [T]he victim ... Mary Ann Medley, ... would testify that she was abducted from her home, which is located in the Speedwell area of Claiborne County, by the [petitioner] while he used a screwdriver.
>
> [H]e bound her hands and forcibly placed her in a stolen pickup truck, wherupon (sic) he drove her to three separate and distinct areas in Claiborne County and committed sexual penetration against her, forcibly, without her consent.
>
> The first act would have been in the Gap Creek area of Claiborne County, at which time he took her in a wooded area and forced her to have sexual intercourse.
>
> The second separate and distinct act of rape was the [petitioner] took her to an area in Claiborne County near the Patterson home and forced her to commit, to do fellatio on him.

> The third act ..., occurred in the Red Hill area of Claiborne County where the [petitioner], after loading and forcibly putting her in the back [of] the pickup truck, drove her to Red Hill and forced her to have sexual intercourse with him again.
>
> During the time of this abduction and acts of rape, the [petitioner] took certain items of jewelry from her, ... with the hand of a screwdriver stuck into her side, and, thereby, committing the offense of especially aggravated robbery.

*Id.*, 2004 WL 587642, at *1.

### III. **Legal Standards**

In moving for summary judgment, the respondent asserts that the petitioner has failed to allege a specific claim of constitutional error; has procedurally defaulted his first claim and, perhaps—depending on the interpretation of the claim, his second one as well; or is not entitled to prevail under 28 U.S.C. § 2254(d) of the Antiterrorism and Effective Death Penalty Act (AEDPA) because the disposition of the claim in the state court was not contrary to, or an unreasonable application of, well-established federal law and was not based on an unreasonable factual determination.[1]

#### A. **Standards of Review**

---

[1] According to the Court's calculations, petitioner filed this action after the lapse of AEDPA's one-year statute of limitations. However, the respondent did not rely on a time-bar defense in his summary judgment motion and his failure to do so waives any issue as to timeliness. *See Scott v. Collins*, 286 F.3d 923, 928 (6th Cir. 2002).

3

Summary judgment may be granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The Antiterrorism and Effective Death Penalty Act of 1996 limits a federal court's review of issues previously adjudicated and also provides that a federal court should presume a state court's findings of fact are correct, unless they are based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(2). It is a petitioner's burden to rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Moreover, a petitioner cannot be granted habeas relief on any claim litigated in the state courts, unless the resulting decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

B. **Law of Exhaustion/Procedural Default**

Under 28 U.S.C. § 2254(b) (1), a state prisoner's petition for a writ of habeas corpus will not be granted unless it appears that he has exhausted his available state court remedies, or that there is an absence of available state corrective process, or that circumstances exist that render such process ineffective to protect a petitioner's rights. An issue raised solely under state law and not as a violation of Constitution is not exhausted. *Stanford v. Parker*, 266 F.3d 442, 451 (2001). A petitioner who has failed to present a claim in the state courts, and who is now barred by a state procedural rule from returning to those courts to present it, has met the technical requirements of exhaustion (i.e. there are no state

4

remedies left to exhaust) and is deemed to have exhausted his state remedies, but to have done so by way of a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). If a petitioner fails fairly to present his federal claims to the state courts, and in accordance with the state's procedural rules, he forfeits the right to federal habeas corpus review of those claims, unless he can show cause for his non-compliance and actual prejudice as a result of the claimed constitutional violations, *Engle v. Isaac*, 456 U.S. 107, 129 (1982), or can demonstrate that he is actually innocent so that the failure to review his claims will result in a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). A failure to raise a claim on appeal constitutes a procedural default. *See id.*; *Reed v. Ross,* 468 U.S. 1 (1984).

## IV. **Analysis**

Each claim and sub-claim will be discussed individually.

A. **The petitioner was denied due process and equal protection and has suffered cruel and unusual punishment in that the State of Tennessee failed to comply with the requirements of the IAD (Interstate Agreement on Detainers Act)** [Issue 1 in the petition].

In this claim, the petitioner maintains that, in early 1997, the Claiborne County authorities lodged detainers against him in the State of Indiana, where he was then imprisoned. On March 20, 1997, the petitioner initiated proceedings under the IAD, for the purpose of disposing of the detainers. Some seven weeks later, he was transported from the Indiana prison to the Claiborne County jail to await trial on those charges. Knowing that the

5

IAD required the Tennessee authorities to resolve the pending charges within 120 days after his return to Tennessee, the petitioner pressed to have his case concluded, making it clear that he was not asking for any continuances and that he was relying on the IAD's deadline for disposition of the charges. The 120-day deadline passed; 91 days later, the petitioner pled guilty and was placed in the custody of the Tennessee Department of Correction to begin serving his Tennessee sentence of incarceration.

In August of 2001, he raised his allegations in a state habeas corpus petition, contending that his "speedy trial" right under Tenn. Code. Ann. § 40-31-101 (Tennessee's version of the IAD) had been violated. He, however, did not claim that this violated any rights under the federal constitution. Subsequently, a motion to dismiss was filed and the petitioner responded in opposition. The trial court did not take any action, and, though his letters to various judicial officers resulted in the appointment of a new judge to hear his petition, nothing has happened in this case. He contends that his efforts in this regard demonstrates the futility of submitting his IAD claim to the state courts for redress. Presumably, he is offering the procedural history of his state habeas corpus case to illustrate that his claim falls under the "futility" exception to the requirement that he completely exhaust his federal claims by fully and fairly presenting them to the state courts prior to filing a § 2254 petition. *See* 28 U.S.C. 2254(b)(1); *Rose v. Lundy*, 455 U.S. 509 (1982).

The attachments to the § 2254 application disclose that the petitioner, just as he has asserted, raised his IAD claim by way of a habeas corpus petition filed in the Claiborne County Criminal Court; that its disposition was delayed; and that a new judge was

appointed to preside over the petition. However, the state court record contains additional details. Among those details are that, on August 25, 2003, the trial court ordered the petition dismissed; that, through a procedural snafu, the order of dismissal was not entered by the Claiborne County Circuit Court Clerk; and that, subsequently, the error was noticed, the order was entered, and the petitioner was notified of the dismissal in February 2004. There is nothing in the record to show that the petitioner took an appeal.

Petitioner's failure to pursue an appeal and his failure to offer the claim on a federal constitutional basis constitute a double procedural default, which bars federal habeas corpus review, unless he shows both cause and prejudice or that a fundamental miscarriage of justice will occur if he cannot litigate his claim. The petitioner has made no such a showing and, thus, his claim has been procedurally defaulted.

Even if not procedurally defaulted, as the respondent correctly points out, federal habeas corpus relief typically does not lie for a state prisoner's claimed violation of the IAD. The law is well-settled in the Sixth Circuit that, absent exceptional circumstances, a violation of the IAD does not give rise to habeas corpus relief. *See Metheny v. Hamby*, 835 F.2d 672 (6th Cir. 1987) (violation of provision of IAD not fundamental defect cognizable in federal habeas corpus proceeding absent exceptional circumstances); *see also Browning v. Foltz*, 837 F.2d 276, 283 (6th Cir. 1988) (same). None of the circumstances surrounding the disposition of petitioner's charges are so exceptional as to merit habeas corpus relief.

Accordingly, the writ will not issue with respect to claim one.

B. **The petitioner's mental condition and the medications he was taking prevented him from entering knowing, voluntary and intelligent pleas of guilty** [Issue 2 in the petition].

The petitioner contends that, following a court-ordered mental evaluation, he was diagnosed as suffering from paranoid schizophrenia and major depression, based on his having disorganized speech and frequent visual and auditory hallucinations. He further contends that the trial court had been informed about his mental problems, but, nonetheless, permitted him to proceed *pro se*. Finally, he maintains that, up to and including the day he entered his guilty plea, he was so heavily dosed on psychotropic medications that he could not have pled guilty knowingly, voluntarily and intelligently. This claim implicates the petitioner's Sixth Amendment right to counsel and right to self-representation, as well as his due process right under the Fourteenth Amendment which insures that guilty pleas are valid only if made voluntarily and knowingly.

1. <u>Rule 2 Compliance</u>: The respondent's first argument, in his dispositive motion, is that the claim is not cognizable because it has been insufficiently pled.

Under Rule 2(c), Section 2254 Rules, a habeas corpus petitioner must "specify all the grounds for relief which are available" and "set forth in summary form the facts supporting each of the grounds thus specified." To be entitled to habeas corpus relief, a petitioner must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Section 2254 Rules). A bald, conclusory claim, not supported by facts, will not

8

entitle a petitioner to habeas corpus relief. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991).

Though, perhaps, not alleged with the utmost clarity, the claim is sufficiently detailed to enable the Court to discern what the petitioner is claiming. As the Court reads this *pro se* pleading, the petitioner is alleging a two-part claim: 1) that he was mentally incompetent to waive his right to counsel and invoke his right of self-representation, and 2) that he was mentally incapable of entering voluntary and knowing guilty pleas because he was heavily medicated at the time. Therefore, the Court finds that this claim is adequately-pled and is not conclusory under Rule 2.

2. <u>Procedural Default</u>: The respondent next argues that the claim has been procedurally defaulted. For the sake of discussion, the Court will address each sub-claim individually.

i) *<u>Waiver of the right to counsel</u>*: The state court record limns the circumstances out of which this claim arose. Attorney Charles Herman, a public defender, was appointed to represent the petitioner after his indictment by a Claiborne County Grand Jury.[2] Thereafter, the petitioner filed a motion seeking to have his appointed counsel removed due to unidentified communication problems and specifically requested that Attorney John McAfee, who was a part-time Assistant Public Defender, be appointed in his

---

[2]. In his affidavit of indigency, the petitioner averred that he could not afford to hire a lawyer and requested the appointment of "Mr. John McAffee 'only.'" (Addendum No. 2 at 194-96.

private capacity. (Addendum No. 2 at 197-98). Finding no good cause to support it, the trial court denied the motion. Thereafter, the petitioner renewed the motion, this time suggesting that his counsel of record was providing ineffective assistance; that an investigator with the Public Defender's office who was working on the case had a conflict of interest; and that he would like to have Attorney Jimmy Estep appointed to replace Mr. Herman. (Addendum No. 2 at 203-04, Motion filed Dec. 2, 1997).

At the hearing on the motion, (Addendum No. 2, Motion Hr'g Trans. at 109-164), Mr. Herman made introductory remarks, in which he characterized the motion as adversarial; stated that the petitioner was refusing to talk to him; and asked that the hearing be held ex parte, explaining that he was the petitioner's attorney at this time and still had an obligation to protect his client's interests. The trial court granted that request. It then questioned the petitioner as to the allegations in his motion, including his contention that Mr. Herman gave him ineffective assistance by failing to inform him that he had a right to represent himself. (During the trial court's questioning, the petitioner admitted that he knew he could represent himself and, in fact, he conducted Mr. Herman's cross-examination.)

Mr. Herman, responding to the petitioner's contentions, testified as to the steps he had taken to prepare for trial. He stated that he has explored whether an insanity defense would be viable by having the petitioner evaluated at the Cherokee Mental Health facility. The clinical psychologist who performed the mental assessment reported that the petitioner was competent and that an insanity defense would not be sustainable. However, the

psychological report also indicated that the petitioner's symptoms might be consistent with paranoid schizophrenia, major depression, drug dependence, and/or personality disorders.

Mr. Herman testified that, based on the "symptoms" section of the report, he had arranged for the petitioner to undergo a second evaluation, which had been scheduled for next day. At the end of the hearing, the trial court stated that it would delay ruling on the petitioner's motion, until it had an opportunity to review of the results of the second mental examination. The mental assessment followed, and the second clinical psychologist reached the same conclusions as to the petitioner's competency and sanity as the first one. Her subsequent report was relayed to the trial court.

However, before the trial court ruled on the pending motion, the petitioner filed another motion, asking to be allowed to proceed *pro se* and asserting that he understood his Sixth Amendment right to conduct his own defense; that he was being forced to trial with counsel; and that he wished to have Attorney Jimmy Estep, III, appointed as standby counsel to assist him with basic courtroom mechanics.

The trial court granted the petitioner's request to represent himself and appointed Mr. Estep, as well as Mr. Herman, to serve as standby counsel to the petitioner. (Addendum No. 2 at 169 and 201). As it happened, the petitioner pled guilty on the day of trial, pursuant to a plea agreement negotiated by Mr. Herman and Mr. Estep.

Against this factual backdrop, the petitioner filed a post-conviction petition, challenging the trial court's ruling on his motion for self-representation. Acknowledging that he had requested to represent himself, he asserted, nonetheless that he was not "mentally fit"

11

to do so because he suffered from depression and anxiety. (Doc. 6, Addendum No. 1 at 4-5). The petitioner further alleged asserted that "the Trial Judge allowed [him] to continue [to represent himself?] without first testing his mental ability and stability" and that he "was unable to represent himself considering the kind and amount of medication [] which he was taking." (Id.).

After an evidentiary hearing on his post-conviction claim, at which the petitioner and his standby attorneys testified, the post-conviction court held that the petitioner had voluntarily waived his right to counsel. On appeal, the Tennessee Court of Criminal Appeals pointed out that the petitioner had alleged, in the post-conviction court, that the waiver was involuntary because he was mentally incompetent, whereas on appeal he had claimed that the waiver was involuntary because he was not sufficiently advised by the trial judge of his right to pursue an insanity defense.[3] The state court cited to its own decision for the procedural rule of waiver which holds that a petitioner may not assert one ground for relief in the trial court and then pursue a new or different theory on appeal. The state court found that the rule of waiver applied to the petitioner's waiver-of-counsel claim.

A rule which operates in a similar fashion applies in federal habeas corpus proceedings: a petitioner commits a type of procedural default if he fails to raise his habeas claim under the same theory as he raised it in the state courts. *See Wong v. Money*, 142 F.3d

---

[3] The section 2254 petition contains no claim that the waiver of the right to counsel was involuntary due to the trial court's failure to advise him as to an insanity defense.

12

313, 322 (6th Cir. 1998) (finding procedural default where a claim rested on a different theory from the one considered and rejected by state court).

This Court has examined the petitioner's appellate brief, and it does not contain the same issue (i.e., that his mental infirmities prevented him from voluntarily and intelligently waiving his right to counsel) as is presented in his habeas petition. Thus, by failing to present the claim under the same theory to the intermediate state court, the petitioner has procedurally defaulted it. This is so despite the fact that the petitioner pursued his habeas claim in the highest state court by including it in his application for permission to appeal. Put simply, a failure to raise a claim in the Tennessee Court of Criminal Appeals in a post-conviction proceeding is not cured by offering it to the Tennessee Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999) (a petitioner cannot skip a step in the appellate review process); *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (offering a claim for the first time to the state's highest court for discretionary review does not exhaust it); *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003) (citing to Tenn. S. Ct. Rule 39 and finding that raising a claim in the Tennessee Court of Criminal Appeals will suffice to exhaust it), *cert. denied*, 541 U.S. 956 (2004).

However, as observed earlier, a petitioner may still receive review of habeas claim if he can show: 1) cause for his failure to raise it earlier and actual prejudice resulting from the alleged constitutional violation or 2) actual innocence. The petitioner has alleged none of these things and, therefore, habeas review is foreclosed on this sub-claim due to his procedural default.

13

ii) *Invalid guilty pleas*: In the petition for state post-conviction relief, the petitioner contended that the trial court "did not question [him] concerning ... his mental condition at the time in which he plead (sic) guilty" and that "[c]onsidering the Medication ... which [he] was taking during his Plea Bargain phase of his trial, he was not competent to make any plea."

The petitioner's brief in the Tennessee Court of Criminal Appeals shows that he attacked the validity of his guilty pleas on the basis that the trial court failed to inform him of his right to appeal, not on the basis that he was so heavily medicated and mentally-ill that he was incapable of entering voluntary and intelligent pleas. Thus, by failing to present the claim under the same theory to the intermediate state court, the petitioner has procedurally defaulted it. *See Wong*, 142 F.3d at 322. And, once again, the fact that he offered his habeas claim to the Tennessee Supreme Court in his application for permission to appeal leads to no different conclusion. *O'Sullivan*, 526 U.S. at 845-47; *Castille*, 489 U.S. at 351; *Adams*, 330 F.3d at 403.

In the absence of any showing of cause or prejudice, federal review is barred on this sub-claim also, based on the petitioner's procedural default.

3. **Adjudicated Claims**: Because the Court finds that all claims have been procedurally defaulted, it need not address the respondent's last argument, made in the alternative, that the claims were adjudicated by the state courts and the resulting decision was not an unreasonable application of the governing legal rule.

V. **Certificate of Appealability**

14

The Court must now consider whether to issue a certificate of appealability (COA) should the petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. A petitioner whose claims have been rejected on a procedural basis satisfies the requirements of § 2253(c) by showing that reasonable jurists would debate the correctness of the Court's procedural rulings. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has individually assessed the petitioner's claims under the relevant standards and finds those claims do not deserve to proceed further because jurists of reason would not conclude that the disposition of those claims was debatable or wrong. Since the petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

## VI. **Conclusion**

The Court will **GRANT** the respondent's motion for summary judgment on the basis of the petitioner's procedural default; will **DISMISS** this case, and **WILL NOT ISSUE** a COA.

A separate order will enter.

ENTER:

s/Thomas W. Phillips
**UNITED STATES DISTRICT JUDGE**